25-1316-cv
*A.A.C., et al. v. Starpoint Central School District, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of January, two thousand twenty-six.

PRESENT:  GUIDO CALABRESI,
GERARD E. LYNCH,
SARAH A. L. MERRIAM,
*Circuit Judges.*

————————————————————————

A.A.C., T.C. EX REL. A.C., G.C.,

*Plaintiffs-Appellees*,

v.                                                         25-1316-cv

STARPOINT CENTRAL SCHOOL DISTRICT, DR. SEAN CROFT, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, MAUREEN BRAUNSCHEIDEL, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY, DR. ALAN INGRAHAM, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, DR. COREY GRAY, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, DR. THOMAS SZALKOWSKI, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, FRAN ANDERSON, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY, JOHN ANDREWS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, VINCENT DELL'OSO, INDIVIDUALLY AND IN

HIS OFFICIAL CAPACITY, JOHN DOE(S), INDIVIDUALLY
AND IN THEIR OFFICIAL CAPACITIES,

*Defendants-Appellants.*[*]

———————————————————————

For Defendants-Appellants: MICHAEL P. MCCLAREN, Gross Schuman, P.C., Buffalo, NY; Meghan M. Hayes, Webster Szanyi LLP, Buffalo, NY.

For Plaintiffs-Appellees: R. ANTHONY RUPP III (Paul D. Jager, *on the brief*), Rupp Pfalzgraf LLC, Buffalo, NY; Chad A. Davenport, Davenport Law PLLC, Hamburg, NY.

Appeal from the United States District Court for the Western District of New York (John L. Sinatra, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the appeal is **DISMISSED** as moot.

Plaintiffs-Appellees are parents of a minor child, A.C., who started sixth grade at Starpoint Middle School in the 2024–2025 school year. Defendants-Appellants, the Starpoint Central School District and some of its officials, appeal from an expired preliminary injunction that enjoined them from excluding A.C. from school for her failure to comply with immunization requirements. We assume the parties' familiarity with the underlying facts, the procedural history,

---

[*] The Clerk of Court is respectfully directed to amend the caption as reflected above.

the arguments presented on appeal, and the district court's rulings.

## I.    BACKGROUND

### A.    *Statutory and Regulatory Framework*

New York Public Health Law § 2164 sets up an immunization schedule for all school-attending children. *See* N.Y. Pub. Health Law § 2164(2)(a)–(c). Among other required vaccines, a child must be vaccinated against tetanus, diphtheria and pertussis, commonly through a combined "Tdap" vaccine, when the child first attends school, and through a booster when the child enters the sixth grade. *See id.* Section 2164 prohibits any school from admitting children not so immunized. *See id.* § (7)(a).

Those requirements do not apply "[i]f any physician licensed to practice medicine in [New York] certifies that such immunization may be detrimental to a child's health," and "until such immunization is found no longer to be detrimental to the child's health." *Id.* § (8). The statute does not define the phrase "may be detrimental to a child's health," but it does delegate general rulemaking authority to the Commissioner of Health, authorizing the commissioner to "adopt and amend rules and regulations to effectuate the provisions and purposes of [§ 2164]." *Id.* § (10); *see also id.* § 206(1)(l) (tasking the Commissioner

3

of the New York State Department of Health with establishing and operating child immunization programs).

An implementing regulation defines the phrase "[m]ay be detrimental to the child's health" to "mean[] that a physician has determined that a child has a medical contraindication or precaution to a specific immunization consistent with [Center for Disease Control and Prevention's Advisory Committee on Immunization Practices ("ACIP")] guidance or other nationally recognized evidence-based standard of care." N.Y.C.R.R. tit. 10, § 66-1.1(l). For the Tdap vaccine, ACIP guidelines consider, in relevant part, a "[p]rogressive or unstable neurological disorder" as one precaution "until a treatment regimen has been established and the condition has stabilized." App'x 1460.

The regulations further prohibit schools from admitting an unvaccinated child unless the child provides, in relevant part, "[a] signed, completed medical exemption form approved by the [New York State Department of Health ("NYSDOH")] . . . from a physician licensed to practice medicine in New York State certifying that immunization may be detrimental to the child's health." N.Y.C.R.R. tit. 10, § 66-1.3(c). The form must "contain[] sufficient information to identify a medical contraindication to a specific immunization and specify[] the length of time the immunization is medically contraindicated." *Id.*

Upon receiving the exemption request, the school "may require additional information supporting the exemption." *Id.* Recognizing that "[s]chools are on the front[]lines in the defense against vaccine[-]preventable diseases," NYSDOH tasks schools with "the responsibility to reject immunization records [the schools] believe to be fraudulent based on their knowledge and assessment of the facts." App'x 1536. NYSDOH instructs schools on spotting "Red Flags that warrant further investigation," such as identifying "a provider with a known history of vaccination fraud" or who "do[es] not follow the norm when it comes to administering vaccines or medical exemptions," or a student who "submit[s] the same medical exemption annually with a contraindication . . . that is not valid according to [ACIP guidelines]." *Id.*

### B.    *Factual and Procedural Background*

In the fall of 2024, A.C. started sixth grade and was due to receive a Tdap booster. Plaintiffs submitted a medical exemption request on her behalf, which was issued by an out-of-state practitioner and broadly asserted that A.C. was permanently exempt from any vaccinations. Defendants denied the request and informed plaintiffs that A.C. would be excluded from school beginning on

5

October 15, 2024, unless she received the vaccine by then.[2] Plaintiffs petitioned the Commissioner of Education for review of the denial, to no avail.

Plaintiffs did not seek further review of that denial in state court. Instead, on October 28, 2024, they brought this action in the United States District Court for the Western District of New York. The parties stipulated that A.C. could return to school until her scheduled doctor's appointment on December 3, 2024. On that day, a New York-licensed physician, Dr. Joseph A. Riccione, issued a medical exemption for A.C. The exemption describes A.C.'s adverse reaction to the vaccine in the form of "neurological vocal and motor tics," which "ha[d] been chronic" since A.C. first received the vaccine in 2018, and concludes that the "tics constitute a neurological disorder which falls under a valid ACIP precaution/reason for exemption." *Id.* at 205.

After receiving the exemption, defendants requested pertinent office visit notes regarding the diagnosis, and plaintiffs refused. Defendants then consulted NYSDOH, which responded that, according to ACIP, "vocal and motor tics are not contraindications or precaution[s] to Tdap." *Id.* at 1264. Defendants denied

---

[2] Around the same time, defendants also denied an exemption request plaintiffs submitted on behalf of G.C., A.C.'s elder sister, after discovering that plaintiffs had altered G.C.'s vaccination record.

6

the request and notified plaintiffs that A.C. could not attend school starting January 2, 2025.

Plaintiffs did not seek review of that denial by the Commissioner of Education. On December 29, 2024, they amended their federal complaint, asserting various federal statutory and constitutional claims, and a state constitutional claim. They also sought a temporary restraining order and a preliminary injunction. The district court temporarily restrained defendants from excluding A.C. from school until the disposition of the preliminary injunction motion.

After conducting an evidentiary hearing and reviewing supplemental briefing, the district court granted plaintiffs' motion for a preliminary injunction on April 25, 2025. Notably, the district court rejected all of plaintiffs' pleaded claims as unlikely to succeed on the merits, but discovered an unpleaded state-law claim which, the court believed, was likely to succeed. The unpleaded claim in which the district court found merit was based on New York *statutory* law, on the theory that the defendants' denial of A.C.'s exemption, and perhaps the regulations on which they relied, was contrary to the mandate of § 2164, because the defendants denied "the facially and procedurally valid exemption request

that Dr. Riccione completed on A.C.'s behalf." Special App'x 22.

To pursue such a claim in New York state court, a parent would ordinarily first petition the Commissioner of Education. *See* N.Y. Pub. Health Law § 2164(7)(b). If unsuccessful, the parent could challenge the commissioner's denial as arbitrary and capricious in the appropriate New York supreme court pursuant to Article 78 of New York's Civil Practice Law and Rules. *See* N.Y.C.P.L.R. § 7804(b). Appellate courts in New York have yet to adjudicate such a claim on the merits. *See Coritsidis v. New York City Department of Education*, 242 A.D.3d 886, 888 (2d Dep't 2025) (affirming the supreme court's denial of a parent's direct challenge to a school's exemption denial under Article 78 for failure to exhaust administrative remedies, without reaching the merits). The only reported trial court decision addressing a similar claim rejected it on the merits. *See Lynch v. Clarkstown Central School District*, 590 N.Y.S.2d 687, 690 (N.Y. Sup. Ct. 1992) (holding that a school's denial of a religious exemption after investigating its basis was not arbitrary and capricious).

Despite the claim's novelty and the important state interests it implicated, the district court exercised its discretion to assert supplemental jurisdiction over the claim. The district court declared defendants' denial of A.C.'s request invalid,

8

relying not on any New York authority, but on this Court's decision in *Miller v. McDonald*, 130 F.4th 258 (2d Cir. 2025), *cert. granted and judgment vacated*, No. 25-133, 2025 WL 3506969 (U.S. Dec. 8, 2025), which it read as holding that New York school officials lacked any discretion to approve or deny exemptions that were backed by a proper form signed by a New York-licensed physician. *Miller* addressed, however, not a denial of a medical exemption, but rather Free Exercise Clause objections to New York's repeal of *religious* exemptions to immunization requirements. *See* 130 F.4th at 264–70. In the course of upholding that repeal, we concluded that the state's vaccination requirements remained "neutral and generally applicable" because only "an 'objectively defined' group'" of children in need of medical exemptions could obtain them. *Id.* at 268–69, quoting *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 289 (2d Cir. 2021), *opinion clarified on other grounds*, 17 F.4th 368 (2d Cir. 2021). In other words, school officials did not have unfettered, "improper discretion" to shape the medical exemption or create new exemptions however they wished, while excluding religious exemption seekers. *Id.* at 269; *cf. Fulton v. City of Philadelphia*, 593 U.S. 522, 536–37 (2021) (striking down city actions that burdened religious freedom as not "generally applicable" because the decision-making official had "sole

9

discretion" to grant individual exemptions).

Defendants timely appealed from the grant of the preliminary injunction. The preliminary injunction, however, was short-lived. Although plaintiffs had sought an injunction that would last through the final resolution of the case, the district court set an expiration date at the earlier of either the resolution of the case or the end of the 2024–2025 school year. That school year concluded on June 24, 2025, and the preliminary injunction expired.

## II.   DISCUSSION

The parties do not dispute that the expiration of the preliminary injunction would ordinarily moot the appeal. Rather, they disagree on whether the capable-of-repetition exception to mootness applies. That exception "'applies only in exceptional situations' where '(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Doe v. McDonald*, 128 F.4th 379, 386–87 (2d Cir. 2025), quoting *Lillbask ex rel. Mauclaire v. State of Connecticut Department of Education*, 397 F.3d 77, 85 (2d Cir. 2005).

We have cautioned, however, against invoking the capable-of-repetition

10

exception to review otherwise moot interlocutory appeals of *preliminary* injunctions, for several reasons. *See Independence Party of Richmond County v. Graham*, 413 F.3d 252, 256 (2d Cir. 2005). First, where the issues raised in the appeal "remain pending before the district court," they do not "evade review." *Id.* Second, the interlocutory appeal of a preliminary injunction is already an exception to "the ordinary rule . . . that appellate courts review only 'final decisions' of a lower court." *Id.*, quoting 28 U.S.C. § 1291. That exception should not be expanded needlessly. Third, the review of a preliminary injunction, especially on the likelihood-of-success prong, often "preempt[s] the district court's resolution of" the relevant claims. *Id.* at 257. When the challenged injunction is still in force, that intrusion is justified to "prevent the injustice of burdening a party with a manifestly erroneous decree." *Id.* at 256. But once the injunction expires, the risk of ongoing injustice diminishes; so does the need for review. *See id.* at 256–57.

Defendants' argument that the current case fits the capable-of-repetition exception is not frivolous. A New York regulation requires that the medical exemption "be reissued annually." N.Y.C.R.R. tit. 10, § 66-1.3(c). In the abstract, the limited duration of the remaining school year could be "too short to . . . fully

11

litigate[]" the challenged exclusion "prior to its . . . expiration." *Doe*, 128 F.4th at 387 (internal quotation marks omitted). There can be "a reasonable expectation that" the school may deny plaintiffs' renewed exemption requests, plaintiffs may move for another preliminary injunction, and that the district court may grant it until the end of the next school year. *Id.* (internal quotation marks omitted). That dispute might again fail to be resolved within *that* school year before the injunction expires.

Events during the course of an ongoing litigation may evolve, however, such that the contours of the dispute may change from one year to the next. That is what happened in this case. Both the facts and the law relevant to the preliminary-injunction dispute in this case now differ from those the district court faced in the prior year, illustrating the reasons for the *Independence Party* rule.

First, this year's application appears to have taken a different path. For the 2025–2026 school year, Dr. Riccione first issued an exemption request for A.C. on September 17, 2025, and then a second on November 12, 2025. *See* Exhs. A, C, to Supplemental Brief for Appellants at 7, 12, *A.A.C. v. Starpoint Central School District*, No. 25-1316 (2d Cir. Dec. 5, 2025), ECF No. 78. Both forms differ from the

12

one Dr. Riccione issued for the previous year in two respects: they address not only the Tdap vaccine but also the Meningococcal vaccine;[3] and they describe A.C.'s tic disorder, on which the doctor had relied in the previous year, as "[u]nstable" instead of "chronic." *Compare id.* at 12 *with* App'x 205.

Moreover, while defendants had denied the September 17 request and represented to us at oral argument that they anticipated denying the November 12 one, they permitted A.C. to attend school pending their review of the second application, instead of excluding A.C. right away. Supplemental Brief for Appellants at 2, No. 25-1316; Oral Argument at 41:35–42:03, *A.A.C. v. Starpoint Central School District*, No. 25-1316 (2d Cir. Dec. 9, 2025). Nor did plaintiffs seek a preliminary injunction to challenge the denial of the September 17 request as they had done the previous year;[4] they may yet choose to exhaust their administrative

---

[3] ACIP does not list any neurological disorder as a contraindication or precaution to MenACWY, the common vaccine against Meningococcal disease. App'x 1459.

[4] Plaintiffs sought a temporary restraining order and a preliminary injunction at the beginning of the 2025–2026 school year, but solely to enjoin defendants from excluding A.C. from school until A.C.'s annual physical examination, prior to the issuance or submission of any exemption request. The district court did not immediately grant that relief in reliance on its prior decision. Rather, it denied the motion for a temporary restraining order and referred the motion for a preliminary injunction to a Magistrate Judge for a

remedies and seek review in state courts, whose decisions are not subject to our review.

Second, the legal landscape has also shifted by virtue of factual developments. In the 2024–2025 school year, defendants' rejection of the exemption request turned on their conclusion that the certification, on its face, did not diagnose A.C. with a condition covered by the ACIP guidance, which New York regulation required for a finding that the Tdap vaccine "may be detrimental to the child's health." N.Y.C.R.R. tit. 10, § 66-1.1(l). Plaintiffs' challenge of that denial under § 2164, at least in part, questions whether the regulatory definition of "detrimental" conflicted with the governing state statute. However, the 2025–2026 requests, insofar as they sought an exemption from the Tdap vaccination,[5] describe an unstable neurological disorder that facially falls within an ACIP "precaution." Their validity thus more squarely presents the issue of whether defendants may question the reasonableness, good faith, or accuracy of the certifying doctor's diagnosis.

report and recommendation. The Magistrate Judge has not taken action on the matter, and it is unclear whether the plaintiffs continue to seek that relief.

[5] The current exemption forms also cover a different vaccination, raising entirely separate questions not addressed at all in the 2024–2025 litigation.

14

Moreover, while there remains no New York authority interpreting the requirements of § 2164 as rigidly as did the district court, the principal authority on which the district court relied to support its reading, our decision in *Miller*, is no longer a part of the legal landscape. The Supreme Court vacated that decision and remanded the case for reconsideration. *See Miller v. McDonald*, No. 25-133, 2025 WL 3506969, at *1 (U.S. Dec. 8, 2025). The case remains pending before another panel of this Court. Thus, the principal authority on which the district court relied, rightly or wrongly, for its interpretation of the New York statute, no longer exists.

As a result, the repetition of the same legal dispute that the district court decided in issuing the expired 2024–2025 injunction, based on the record before it at the time it ruled, is at best "highly speculative." *Doe*, 128 F.4th at 387. Whether defendants must accept A.C.'s exemption request under New York law will return to us only if plaintiffs again seek to short-circuit the Article 78 process and rush straight to federal court, and the district court grants another preliminary injunction for the 2025–2026 school year despite the vacatur of *Miller*. And even if the dispute reaches us again, we would face different issues against a different factual and legal backdrop, as Dr. Riccione's description of A.C.'s medical

15

condition has shifted. Adjudicating the correctness of the expired injunction promises no concrete relief but risks "advising what the law would be upon a hypothetical state of facts." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013), quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). Thus, even if the rule of *Independence Party* is not absolute, this case fits neatly within its logic, and does not fall under any hypothetical exception to it.

*    *    *

For the foregoing reasons, the instant appeal does not present a live case or controversy, and accordingly is **DISMISSED** as moot.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk